No. 26-1745

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERCIA APPELLEE

V.

SYLVESTER SMITH III APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS, CENTRAL DIVISION

THE HONORABLE LEE P. RUDOFSKY

UNITED STATES DISTRICT JUDGE

# BRIEF OF APPELLANT SYLVESTER SMITH III

Sylvester Smith
ABN2013146
The Firm, PLLC
4137 JFK BLVD, Suite D
North Little Rock, Arkansas 72202
Telephone: (501) 975-7123
Facsimile: (501) 975-7153
ssmith@thefirmpllc.net

*Attorney for Appellant*

## SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT

This is an appeal of a finding of criminal contempt made against the undersigned. The finding was made in the case of United States of America v. Bruce McArthur Smith, Kevin Langel, and Larry Rogers. See 4:22CR00319. The Appellant was making his closing argument in the trial and through a slip of the tongue used a colloquialism that was not appropriate for a criminal trial. Specifically, in reference to the DEA agent who oversaw the underlying case the Appellant stated that he had to "pin him down like a greasy little pig" to get an answer out of him. The Honorable Lee P. Rudofsky the ("Court") called the Appellant to the bench, admonished him that the statement was inappropriate and directed him to apologize.

The Appellant immediately apologized to the jury, to the Court and to the agent he made the remark about. The Court issued an Order by which it found the Appellant in criminal contempt of court and fined him One Thousand Dollars ($1,000.00).

On appeal, the Appellant challenges the constitutionality of 18 U.S.C. §§ 401-402 and Federal Rule of Criminal Procedure 42(b). Additionally, the Court's finding was erroneous because the Appellant did in fact apologize, and the Court erred in finding the Appellant in criminal contempt without proper notice, a hearing or the right to counsel. For all of those reasons the Order for contempt should be set aside. The Appellant requests a 20-minute oral argument.

# TABLE OF CONTENTS

Page No.

Summary of the Case ........................................................................................i

Table of Contents ........................................................................................ ii

Table of Authorities ..................................................................................... iii

Statues…………………………………………………………………...…....iv

Jurisdictional Statement ...............................................................................1

Statement of the Issues..................................................................................2

Statement of the Case....................................................................................3

Summary of Argument..................................................................................7

Argument.......................................................................................................8

Conclusion ..................................................................................................22

Certificate of Compliance ...........................................................................24

Certificate of Service ..................................................................................25

## TABLE OF AUTHORITIES

**Cases:** Page No.

*Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481,20 L.Ed.2d 522 (1968) ……………………………………………………………………..…..9, 21

*Coffin v. United States*, 156 U.S. 432, 458-459……………………………………..11

*Coleman v. Johnson*, 566 U.S. 650, 654……………………………………………18

*Cooke v. United States*……………………………………………………………..….16,22

Fox, *The King v. Almon,* 24 L.Q. Rev. 184, 194–195 (1908)……………………...8

*Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911)…………………………………………………………………..22

*Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988)…………………………………………………………………………..9, 22

*In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943)…………………..…22

*In re Murchison*, 349 U.S. 133 (1955)…………………………………...9,10,16

*Mayberry v. Pennsylvania*, 400 U.S. 455……………………………………10, 16

*Nilva v. United States, 352 U.S.* 385, 403……………………………..…10, 18

*Offutt v. United States*, 348 U.S. 11…………………………………...……10,16

*Strickland v. Washington*, 466 U.S. 668, 671……………………………………..19

*Tinker v. Des Moines, 393 U. S., at 506, 513, 89 S. Ct. 733, 21 L. Ed. 2d 731*......19

*Tumey* v. *Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927)…………………………….....9

*United States v. Carlson*, 810 F.3d 544……………………………………..…..8

*United States v. Cottrell,* 853 F.3d 459, 463 (8th Cir. 2017)……………………..23

*United States v. Dehghani*, 550 F.3d 716, 719, 723 (8th Cir. 2008)……………...23

*United States v. Schram, 128 F.4th 922*……………………………………………….21

*United States v. Spikes*, 543 F.ed 1021, 1023 (8th Cir. 2008)…………………....23

*Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)…….9

**Statutes**

18 U.S.C. §3231…………………………………………………………………….1

18 U.S.C. §§ 401-402…………………………………………………......8, 17

18 USC § 3553 (b)(2)[(A)](i)…………………………………………………..23

28 U.S.C. §1291………………………………………………………………………1

## JURISDICTIONAL STATEMENT

The Appellant was found guilty of criminal contempt via Order issued on April 6, 2026. (R. Doc. 536). The district court's jurisdiction over the case was based on 18 U.S.C. §3231. A Notice of Appeal was filed on April 20, 2026. (R. Doc. 540). Since this appeal is from a final decision of a United States District Court, this Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

I. Whether 18 U.S.C. §§ 401-402 and Federal Rule of Criminal Procedure 42(b) violate the United States Constitution's requirements for due process of law and trial before an impartial tribunal.

In re *Murchison,* 136, 75 S. Ct. 623, 99 L. Ed. 942. (1955).

*Mayberry v. Pennsylvania*, 400 U.S. 455.

II. Whether the District Court erred in determine the Appellant did not apologize as directed and that his conduct was intentional.

*Nilva v. United States, 352 U.S.* 385, 403.

*United States v. Allmon*, 594 F.3d 981.

III. Whether the District Court committed procedural error by failing to provide the Appellant adequate notice, a full hearing and the right to counsel.

*Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988).

IV. Whether the District Court's punishment was substantially unreasonable.

*United States v. Dehghani*, 550 F.3d 716, 719, 723 (8th Cir. 2008);

## STATEMENT OF THE CASE

Sylvester Smith ("Smith") or ("Appellant") was the defense counsel in a trial before the Honorable Lee P. Rodofsky (R. Doc. 536). The case was United States of America v. Bruce McArthur Smith, Kevin Langel, and Larry Rogers. See 4:22CR00319. *Id.*

The issue which gave rise to the instant appeal occurred during the Appellant's closing argument. *Id.* During the closing the Appellant was trying to come up with a metaphor to demonstrate the challenge he had getting a law enforcement witness to provide a fair answer to a direct question. (Transcript, hereafter referred to as "TR", on page 1120).

The Appellant had been up late the night before due to a bat intrusion in his home and was suffering from a lack of sleep. (Trial Tr. 1173). The undersigned used a rural colloquialism and stated he had to hold the witness down like a greasy little pig. (Trial Tr. 1120). The actual colloquium is to tie one down lie a greasy little pig. (R. Doc. 571-3).

Merriam-Webster defines a "greased pig" as "a small pig smeared with grease and set free for contestants to catch." *Greased Pig*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/greased%20pig (last

visited June 29, 2026). The phrase has been used in public debate for years and as far away as England. [1]

The Government objected to the statement and the Appellant was summoned to the bench. (Trial Tr. 1120). Immediately upon approaching the bench Smith stated "[t]hat was a slip of the tongue. (Trial Tr. 1121). The Court inquired as to if it had actually heard what it thought it heard, and the undersigned admitted his mistake. *Id*. The Court then directed the Appellant to go out there and apologize to the jury. *Id.* Smith then responded "[a]bsolutely. Absolutely." *Id.*

Smith then proceeded to apologize to the Court, the jury and the officer he had made the statement in reference to. *Id.* The undersigned then considered the damage to his client if the jury thought the statement was an intentional insult upon the officer, so he tried to explain what the term meant and why he used it. *Id.* At that point the Court cut him off and told the jury that Smith was violating his directive to apologize. *Id.* The Judge then directed the undersigned to apologize and move on. *Id.* Smith again apologized and while he was doing so, the Judge interrupted him and said "[y]ou should be" [sorry.] *Id.* During the course of the

[1] Matt Drake, *David Cameron Calls Boris Johnson a "Greased Piglet" Before Backing Brexit Deal*, The Independent (Oct. 18, 2019), https://www.the-independent.com/news/uk/politics/david-cameron-boris-johnson-brexit-deal-greasy-pig-harrogate-a9161176.html (quoting David Cameron as stating, "The thing about the greased piglet is that he manages to slip through other people's hands where mere mortals fail.").

closing the Appellant apologized a total of four times for the error. (Trial Tr. 1121, 1135). At the conclusion of the closings the Court asked Smith to explain why he made the statement and to answer for what it perceived as his failure to apologize as directed. (Trial Tr. 1172). At no time did the Court advise that this was hearing, it just stated its intention to find Smith in contempt. *Id.* The undersigned then told the Court that he was suffering from a lack of sleep due to the fact that he was awoken at 1:00 a.m. because bats were flying around his home. (Trial Tr. 1173).

The undersigned is an experienced trial lawyer who has won and lost jury trials. (R. Doc. 536). He knows good and well that insulting law enforcement turns off jurors in Arkansas. (Trial Tr. 1173-1174). The undersigned expressly told the Judge the statement was a "Freudian slip" based upon terms he uses being a southern country boy. *Id.* Smith went on to tell the Court that the statement is used when a person does not want to be "tied down" to an expected answer. *Id.* He further said he would never insult law enforcement and "most certainly not in a federal courtroom." *Id.* He then stated that he was trying to apologize and the Court cut him off again and indicated it did not appreciate Smith's explanation to the jury. *Id.*

The Appellant then advised the Court that he had just personally apologized directly to the agent he made the reference to. *Id.* He then expressly told the Court he had never in his life disrespected law enforcement intentionally. *Id.*

The Court then explained its position that the phrase 'pig" when directed toward a law enforcement officer was the same as the "N-word" used toward a person of color. (Trial Tr. 1175). Smith, (who is a person of color) told the Judge that he is unaware of anyone in 2026 who uses the term "pig" as a derogatory insult to law enforcement. *Id.* The Appellant then went on to advise the Court that he had used the "greasy pig" term about himself in a legislative committee hearing. *Id.* Again, Smith stated the phrase was not appropriate for a federal courtroom. *Id*. He then again told the Judge that tactics and statements that attack the police "turn jurors off," and that he believed the statement set him back with the jury. *Id.*

The Court determined that the Appellant's conduct was intentional and therefore amounted to contempt of court. (Trial Tr. 1176). The Court stated on the record that Smith did apologize and say the statement was unacceptable, but the Court did not like the manner in which the apology was made. *Id*. The Court later reduced its findings to writing and for the first time informed Smith via its Order that he was being held in criminal contempt. (R. Doc. 536). In its Order the Court stated that it witnessed the contemptuous conduct. *Id.* The Appellant was not given notice of the criminal contempt allegation against him, nor was he afforded the opportunity to call witnesses in his defense or have the right to have counsel present.

## **SUMMARY OF THE ARGUMENT**

The Sixth Amendment to the United States Constitution guarantees all persons the right to a fair trial. Such a trial should occur before an impartial tribunal, occur after notice of the charges, and include the right to call witnesses and have counsel present. In the instant action the undersigned was found to be in criminal contempt in violation of each and every right enumerated under the Sixth Amendment. He was given no formal notice of the charge, he was not informed he was accused of criminal contempt, he had no hearing, could call no witnesses and most certainly had no access to counsel.

Furthermore, the current statutory construct which allows a single person (a Federal District Court Judge) to believe it saw or heard contemptuous conduct, then charge someone of that conduct, be the sole witness against the person, make its own findings of fact in regard to the allegations it rose and finally be a single jury; is an evisceration of the due process rights of the accused. Finally, the undersigned was convicted of criminal contempt for failure to apologize as directed by the Court, when he did apologize multiple times. Therefore, the Court's finding were clearly erroneous and not supported by the evidence.

# ARGUMENT

*I. 18 U.S.C. §§ 401-402 and Federal Rule of Criminal Procedure 42(b) violate the United States Constitution's requirements for due process of law and trial before an impartial tribunal.*

A. **Standard of Review**

An appeal of the constitutionality of a federal law or rule is heard by this Court de novo. *United States v. Carlson*, 810 F.3d 544.

B. The Court erred in exercising authority, which is unconstitutionally granted to it by Congress, to unilaterally raise a criminal complaint against the Appellant, prosecute the case, be the sole material witness and then issue judgement.

**Authority**

The Appellant concedes that the current statutory framework allows a Federal District Court Judge to make contempt findings. See, Article III of the United States Constitution ("U.S. Const."). It is important to note that the entire concept of judicial contempt is rooted in the common law's inherent deference for the monarchy. Fox, *The King v. Almon,* 24 L.Q. Rev. 184, 194–195 (1908).

Unilateral authority for a Federal District Judge to summarily issue fines that only restrain a litigants' chattel may be fine in terms of civil contempt. Criminal contempt on the other hand implicates constitutional protections.

"Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481,20 L.Ed.2d 522 (1968). Like other crimes, criminal contempt may not be imposed on someone who has not been given the appropriate constitutional protections. *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988).

The most foundational of these constitutional protections is the right to a fair trial as outlined in the Sixth Amendment. U.S. Const. Amend. 6. [2] It is axiomatic that "[a] fair trial in a fair tribunal is a basic requirement of due process." In re *Murchison,* 136, 75 S. Ct. 623, 99 L. Ed. 942. (1955).

The Supreme Court has long directed judges to recuse themselves from matters in which they have bias. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). Recusal is not optional in circumstances in which there is a high probability of bias. *Id.* The Court has also found that recusal is mandatory where the judge has "a direct, personal, pecuniary interest…" *Tumey* v. *Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927).

There is a long held maximum that goes back to the embers that grew into this great blaze of freedom that is America; that "no man can be a judge in his own cause." The Federalist No. 10, p 59 (J. Cooke ed. 1961) (J. Madison); see Frank, Disqualification of Judges, 56 Yale L. J. 605, 611-612 (1947). To allow a man to be

his own judge would result in bias, "because his interest would certainly bias his judgement…*Id.*

In the "one man grand jury case" the Supreme Court overturned a contempt conviction where the judge who raised the allegation was the one who managed the defendant's trial. See, *In re Murchison*, 349 U.S. 133 (1955). The Court found that the petitioner was denied his right to an "impartial trial" as guaranteed by the Fourteenth and Sixth Amendments. *Id.* See, also *Offutt v. United States*, 348 U.S. 11.

Similarly, in Mayberry, the Supreme Court set aside a contempt finding when the allegations arose from disrespectful conduct made toward the judge. *Mayberry v. Pennsylvania*, 400 U.S. 455.

**Argument**

Criminal contempt proceedings are just that. Those charged have the full array of constitutional rights…including the presumption of innocence. *Nilva v. United States, 352 U.S.* 385, 403. In these proceedings the individual raising the charge is also the one who conducts the trial and is the finder of fact. There is simply no way that one mind can raise a criminal charge against another person (as the accuser) and maintain the presumption of innocence through the trial (as the trial of fact). The That is why this process is so akin to the one-man grand jury case.

*No Plausible Presumption of Innocence*

The presumption of innocence states that as a matter of law the charged individual is presumed innocent until sufficient evidence is introduced at trail to overcome the presumption. *Coffin v. United States*, 156 U.S. 432, 458-459. An old just once explained it thusly to the undersigned. He said the case against the defendant starts with a blank sheet. Until the government puts enough evidence on the sheet to prove his guilt, beyond a reasonable doubt, that presumption remains. There can be no true presumption of innocence in the eyes of a judge who is themselves the one who initiated the complaint based upon a belief of the contemnor's guilt. Therefore, under the current system, there can be no fair trial, because there is no presumption of innocence.

*One-Man Grand Jury*

The current system places District Court Judges in the position of being one-man grand juries. The Judge who saw the contempt or is the victim of the contempt is absolutely an interested party and therefore, the judge in their own case. This is exactly what the founding fathers wanted to avoid as cited in The Federalist No. 10.

The Government will undoubtedly argue that the District Court harbored no personal bias toward the undersigned and possessed no personal or pecuniary interest in the outcome of these proceedings.

The undersigned does not question the integrity of the District Court. Nor does he suggest that the Court acted from malice or ill will.[2] The flaw lies not with the individual judge, but with the system itself.

One of the most important responsibilities entrusted to every federal district judge is ensuring compliance with the Court's lawful orders. That responsibility has become even more significant in an era in which litigants—including governmental entities themselves—too often seek creative ways to avoid compliance with judicial directives.

A judge who develops a reputation for failing to enforce his or her orders risks undermining the authority of the Court itself. The undersigned fully supports a judiciary whose orders are respected and obeyed. Without meaningful contempt powers, the rule of law cannot survive.

The problem is that every judge necessarily possesses an institutional interest in preserving the authority of his or her office. This is not a criticism; it is simply the reality of the judicial office. If members of the bar came to believe that a particular judge tolerated open disobedience or disrespect, some attorneys would inevitably test those boundaries. Human nature does not change simply because one enters a courtroom.

---

[2] The undersigned has dealt with Judge Rudofsky many times and the Judge has always been courteous, considerate and fair.

That institutional interest creates a structural problem in criminal contempt proceedings. When conduct occurs before the Court that the judge believes constitutes criminal contempt, the judge becomes more than a neutral judicial officer. The judge identifies the alleged misconduct, raises the allegation, serves as the principal witness to what occurred, determines the credibility of the accused, finds the facts, determines guilt, and finally imposes punishment. In no other area of our criminal justice system are those roles combined in a single individual. This process is the our nation's last real tie the original common law's deference to the monarchy. Kings were the law, and their word was not questioned. We are a nation of individual rights. Those rights must be protected even for those accused of criminal contempt.

The undersigned can think of only one scenario that resembles this biased adjudication process—that of a parent disciplining a child. The parent observes the misconduct, decides that wrongdoing has occurred, hears whatever explanation the child may offer, determines guilt, selects the punishment, and imposes it. The child does not receive the benefit of an independent decision-maker because the parent's authority over the child is absolute.

The analogy is instructive for another reason. A child remains subordinate to the parent until adulthood. Likewise, a federal district judge exercises continuing authority over the attorneys who regularly appear before that Court. Federal judges

enjoy lifetime appointments. Lawyers often practice before the same judge for decades.

That reality inevitably affects the dynamics of a criminal contempt hearing. How vigorously can an attorney challenge allegations made by the very judge who is presiding over the proceeding? How does counsel meaningfully dispute the judge's recollection of disputed events? Cross-examination of the principal witness is one of the oldest protections in Anglo-American jurisprudence. Yet when the principal witness is also the presiding judge, meaningful adversarial testing becomes extraordinarily difficult…if not impossible.

The issue is not whether judges retaliate against lawyers who successfully defend themselves in contempt proceedings. The issue is that few lawyers would willingly risk creating that perception. Even the possibility of appearing disrespectful to the judge before whom one must continue to practice inevitably chills the defense. The accused attorney is placed in the untenable position of defending himself while simultaneously attempting not to offend the very judicial officer who will determine his guilt and impose sentence. No attorney wants to make an enemy of a federal judge.

Justice must not only be fair; it must appear to be fair. A system that places one individual in the roles of complainant, witness, factfinder, judge, and sentencer; unnecessarily undermines public confidence in the impartiality of the proceeding,

regardless of the integrity of the individual judge. The current system has eviscerated the constitutional protection of a fair trial and the presumption of innocence. Therefore, it cannot stand and should be found unconstitutional.

The solution is both simple and practical. Criminal contempt proceedings should be assigned separate case numbers and referred to another judicial officer for an independent evidentiary hearing. Such a procedure would not diminish the authority of the district courts. It would strengthen it. Findings of criminal contempt entered by a judicial officer wholly removed from the underlying dispute would command greater public confidence, better protect the rights of the accused, and preserve the dignity of the federal judiciary. This Court should adopt such a rule.

**The Proposed Rule Revision**

The undersigned has requested that the Court strike down the current contempt framework. Alternatively, this Court could exercise its well-established supervisory authority over the administration of justice within this Circuit to create a new rule for criminal contempt cases.

Federal courts have long recognized that courts of appeals possess inherent supervisory authority to regulate the procedures employed by the district courts they oversee. That authority exists to ensure the fair administration of justice, preserve public confidence in the judiciary, and establish procedures that promote the integrity of the judicial process. It permits the courts of appeals, in appropriate

circumstances, to adopt procedural safeguards that exceed the constitutional minimum when necessary to protect the appearance and reality of fundamental fairness.

The Supreme Court has repeatedly exercised similar supervisory authority in the administration of federal criminal proceedings. In doing so, it has recognized that procedural rules serve not only to protect the rights of litigants, but also to preserve public confidence in the federal judiciary itself. This Court possesses the same institutional responsibility within the courts of this Circuit.

Indeed, the Supreme Court's contempt jurisprudence already reflects a recognition that the unique nature of criminal contempt proceedings may require procedural protections beyond those ordinarily employed in criminal cases. Decisions such as *Cooke v. United States*, *Offutt v. United States*, *In re Murchison*, and *Mayberry v. Pennsylvania* acknowledge that circumstances may arise in which a judge's personal involvement in the events giving rise to a contempt proceeding creates sufficient concern regarding impartiality to require adjudication by another judge. Those decisions, however, address the issue on a case-by-case basis. The present appeal demonstrates why a clearer procedural rule is warranted.

The structural concern identified by the Supreme Court is not unique to extraordinary cases involving personal hostility between a judge and a litigant. Rather, it is inherent whenever the presiding judge becomes the complainant, the

principal witness to disputed events, the finder of fact, and the sentencing authority in a criminal contempt proceeding arising from conduct directed toward that judge or occurring before that judge.

The rule proposed by the undersigned is modest. It would not diminish the contempt power. It would not deprive district courts of the authority necessary to maintain order in their courtrooms. Nor would it interfere with the well-established authority to impose summary contempt when immediate action is necessary to restore order during ongoing proceedings. Those instances could continue as they do now in the form of civil contempt.

This Court possesses the authority to adopt such a rule in the exercise of its supervisory authority over the administration of justice within the Eighth Circuit. L. Douglas Harris, *Supervisory Power in the United States Courts of Appeals*, 63 Cornell L. Rev. 642 (1978).

For the reasons set forth above the undersigned respectfully requests that this Court declare 18 U.S.C. §§ 401-402 and Federal Rule of Criminal Procedure 42(b) unconstitutional to the extent that they allow a judge to be the accuser, the prosecutor and the finder of fact in criminal contempt proceedings. Additionally, he requests that the criminal contempt finding against him be set aside. Finally, the Appellant requests the Court consider implementing the above proposed process for handling criminal contempt cases.

*II.* *The District Court erred in determine the Appellant did not apologize as directed that his conduct was intentional.*

**A. Standard of Review**

The Court of Appeals will review a district court's findings for clear error. *United States v. Alvarado-Rivera*, 412 F.3d 942, 947 (8th Cir. 2005).

**Authority**

In a criminal contempt case the alleged contemnnor is entitled to the presumption of innocence. *Nilva v. United States, 352 U.S.* 385, 403. Their guilt must be proven beyond a reasonable doubt. *United States v. Allmon*, 594 F.3d 981. Evidence is sufficient to support a conviction if it is substantial enough to convince any rational triar of fact of the guilt of the person on every element of the crime beyond a reasonable doubt. *Coleman v. Johnson,* 566 U.S. 650, 654.

The Court directed the Appellant to apologize for making an inappropriate analogy in his courtroom. The undersigned apologized four times. The Appellant was placed in the difficult spot of trying to correct his own error (and he admits it was an inappropriate forum for that analogy) while honoring his obligation of diligently representing his client.

The Court below found-in part-that the offensive statement was made intentionally. The statement was absolutely not made intentionally. The Court was

absolutely right to direct the undersigned to apologize. That said, freedom of expression is a fundamental right all Americans possess. In *Tinker*, the Supreme Court stated that “students do not shed their rights to freedom of speech or expression at the schoolhouse gate.” 393 U. S., at 506, 513, 89 S. Ct. 733, 21 L. Ed. 2d 731. The undersigned would argue that attorneys do not lose their right to freedom of expression at the courthouse door; so long as they are speaking within the guidelines set forth by the court. For example, while making an opening or closing argument after being called upon to do so.

That said, an attorney’s speech in a trial setting must be regulated by the trial court. Such regulation should be governed by the same standard applied in cases of ineffective assistance of counsel. There the question before a reviewing court is if the challenged conduct “might be considered sound trial strategy.” *Michel v. Louisiana,* 350 U.S. 91 (1955). The Supreme Court has stated that judicial scrutiny of a trial attorney’s conduct must be “highly deferential. *Strickland v. Washington*, 466 U.S. 668, 671.

To be clear, Smith did not simply refer to the federal agent as a “pig.” Instead he used a well-worn southern analogy about tying someone down to an answer. Again, this was not an intentional statement on Smith’s part. However, the Court below found that it was intentional and intended to infame the jury. To the extent this Court agrees then the undersigned asks that it consider the full analogy and not

just the farm animal that it references. It was most certainly sound legal strategy to direct the jury's attention to the fact that the agent referenced in the closing was side-stepping a fair question and refusing to give a direct answer. Therefore, the speech should be protected under the First Amendment. Even to the extent that it included a colorful reference to a group of children chasing a farm animal.

As the undersigned stated to the Court, the "greasy pig" reference likely turned off members of the jury. Which is further evidence the statement was not intentional. He wanted to make sure the jury knew it was not his intent to insult the officer. Smith was trying to explain the lengths he had to go through to get the officer to admit he never found the undersigned's client with drugs. The Court believed the explanation to the jury about the roots of the pig analogy was somehow intended to controvert its order. That was an erroneous finding.

The Appellant went through great lengths to tell the Court his high opinion of law enforcement and that he does not intentionally make disparaging statements about the law enforcement community in public or in private spaces. Smith also explained that he was awoken late at night due to having a bat flying in his home and had little sleep.

It is important to note that the Court had no evidence to controvert Smith's explanation. There is no other point in the closing argument in which the undersigned makes an offensive statement about law enforcement. The Court in its

Order stated the Appellant's extensive trial experience, some of which has occurred before Judge Rudofsky. Yet the Court did not make any factual findings about similar behavior in the instant case or in other appearances before the Court.

Smith, like all persons in the United States of America, was entitled to the presumption of innocence. There were no witnesses against the Appellant. The only evidence against him was the Court's own interpretation of Smith's statements and actions. The Court's interpretation was rebutted with Smith's explanation and his multiple efforts to apologize which are included in the record.

The Court's findings that Smith's use of the "greasy pig" phrase was intentionally intended to inflame the jury and that he failed to adequately apologize were not supported by sufficient evidence to convict him of criminal contempt. Therefore, the conviction should be overturned.

### *III. The District Court committed procedural error by failing to provide the Appellant adequate notice, a full hearing and the right to counsel.*

#### A. Standard of Review

Due process claims are reviewed de novo. *United States v. Summage*, 575 F.3d 864, 872 (8th Cir. 2009).

#### Authority

"Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481,20 L.Ed.2d 522 (1968). Like other crimes,

criminal contempt may not be imposed on someone who has not been given the appropriate constitutional protections. *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988). See *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943) (double jeopardy); *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911) (privilege against self-incrimination, right to proof beyond a reasonable doubt).

The Sixth Amendment to the United States Constitution grants a criminal defendant the right to notice of the charges, a trial and to cross examine witnesses against him. Additionally, one charged with a crime has the right to remain silent under the Fifth Amendment.

**Argument**

The record is clear that the undersigned was not given any of his due process rights prior to being found in criminal contempt. The Appellant was not given advance notice that there would be any sort of hearing in regard to the contempt allegation. He most certainly was not informed that he was facing criminal contempt. Smith had no opportunity to call witnesses and no time to consult counsel. Most

critically the only witness against the Appellant was the Court itself. He did not dare attempt to call the Judge as a witness or try and cross examine him.

Furthermore, Smith had no right not to incriminate himself. He was asked direct questions by a sitting Federal Judge in open court. The failure to answer the questions would have likely resulted in additional contempt findings.

Since the finding of criminal contempt occurred at the conclusion of a trial that violated each and every one of Smith's due process rights, it must be set aside.

*IV. The District Court's punishment was substantially unreasonable.*

**V. Standard of Review**

District Court decisions on punishment are reviewed under an abuse of discretion standard. *United States v. Schram,* 128 F.4th 922.

**Authority**

Sentencing is typically reviewed based upon an inquiry into whether or not the sentence fits the seriousness of the offense. 18 U.S.C. § 3553(a)(2)(A), (C); cf. *United States v. Dehghani*, 550 F.3d 716, 719, 723 (8th Cir. 2008); *United States v. Cottrell*, 853 F.3d 459, 463 (8th Cir. 2017).

**Argument**

The fine of One Thousand Dollars ($1,000.00) is too significant given the fact that Smith made a sincere effort to comply with the Court's directive to apologize,

the lack of any evidence of similar past behavior, and the mitigating circumstances of his loss of sleep.

Pleading in the alternative, and in the event the contempt finding stands, Smith respectfully requests that the sanction be modified. Specifically, Smith requests that the costs of his appeal, which included a docketing fee of Six Hundred Dollars ($600.00) be, be the only penalty imposed.

## CONCLUSION

One of the most famous trials in American history was State of Tennessee v. John Thomas Scopes. Better known as the "Scopes Monkey Trial." The case is most known for its subject matter and the fact that it was tried by two of the greatest lawyers in American history; William Jennings Bryan and Clarance Darrow.

Lessor known is the Honorable John Tate Raulston who presided over the trial. Clarence Darrow & William Jennings Bryan, *The Transcript of the Scopes Monkey Trial: Complete and Unabridged* 334 (Anthony Horvath ed., Suzeteo Enters. 2018).

During the trial Clarance Darrow interrupted the judge repeatedly in open court and sarcastically criticized and insulted him. *Id.* at 335. Judge Raulston was left with no choice but to address Darrow's behavior. *Id.* In his ruling he stated a court should endeavor to avoid doing anything that will incite the passion of the jury and writing passion into its own decrees. *Id.* He further wrote that he withheld any

action until his personal "passion had time to subdue." *Id.* at 336. Judge Raulston made it plain that allowing unlawful and wrongful contempt "does an injustice to the courts and good society." *Id.* He stated that he had always sought to "avoid hastily and rashly rushing to conclusions." *Id.* However, after consideration of Darrow's behavior "and to protect the dignity of the court..." he cited Darrow to appear at 9:00 a.m. on July 21, 1925, to answer the contempt charge. *Id.* The citation effectively gave Darrow notice of the court's allegation of criminal contempt and a date and time for his hearing. Ultimately, there was no contempt hearing, because Darrow wisely apologized to Judge Raulston, who graciously accepted the apology. *Id*. at 356 -359.

In the instant case the Court, like Judge Raulston, sought to protect the standing of the judiciary when faced with what it believed was disrespectful behavior. Judges have an interest in protecting the administration of justice in their courts. That makes them interested parties in contempt disputes. They are not unbiased and cannot give those charged with contempt the benefit of a presumption of innocence. The result is a clear violation of a defendant's Sixth Amendment right to a fair trial by an independent finder of fact.

Unlike Judge Raulston, the Court below did not (despite the passage of time) allow the heat of the moment to cool, nor did it give any consideration to the numerous apologies the undersigned issued to all involved. The result was a "rash"

finding of criminal contempt that was not rooted in substantial evidence sufficient to overcome the undersigned's presumption of innocence.

The undersigned, unlike Clarance Darrow, did not receive a citation (or notice of a criminal contempt charge), the right to call witnesses, the right to cross-examine his accuser, the right to remain silent or counsel.

For those reasons Smith asks the Court to overturn his conviction and his sentence and to find the concurrent law for criminal contempt is unconstitutional. He also respectfully requests the Court utilize its supervisory authority to set forth rules that require judges in the Eight Circuit to refer charges of criminal contempt to other judges for truly unbiased trials. This request is made in hopes that those who are similarly situated receive the fair trial the undersigned was not afforded. And with the purpose of creating a judicial system that is a little more just than it was prior to the instant case.

Respectfully submitted by,

/s/ Sylvester Smith____________

Sylvester Smith
ABN2013146
The Firm, PLLC
4137 JFK, BLVD D
North Little Rock, AR. 72116
(501) 429-4885 phone
ssmith@thefirmpllc.net

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 6,507 words, as calculated by the word count function of the word-processing system (Microsoft Word) used to prepare this brief. This brief complies with the typeface requirement of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14 of Times New Roman. This brief has been scanned for viruses and is virus-free.

Respectfully submitted,

/s/ Sylvester Smith

Sylvester Smith
ABN2013146
The Firm, PLLC
4137 JFK, BLVD D
North Little Rock, AR. 72116
(501) 429-4885 phone
ssmith@thefirmpllc.net

## CERTIFICATE OF SERVICE

I, Sylvester Smith, hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that service will be accomplished by the CM/ECF system on all participants in the case who are registered CM/ECF users.

Respectfully submitted,

/s/ Sylvester Smith

Sylvester Smith
ABN2013146
The Firm, PLLC
4137 JFK, BLVD D
North Little Rock, AR. 72116
(501) 429-4885 phone
ssmith@thefirmpllc.net